SWEETWATER BANK & TRUST CO. et al. v. JOE J. HOWARD et al.

Eastern Section. July 8, 1932.

Petition for Certiorari denied by Supreme Court, October 22, 1932.

Burn & Michael, of Athens, and S. P. Dannel, of London, for appellants.

Peace & Sloan, of Madisonville, for appellees.

PORTRUM, J. The original bill in this cause was filed June 25, 1930, as a general creditors' bill against Joe J. Howard and his wife, Sallie Howard, owners of an unencumbered farm of several

hundred acres and valued at $9,000. It alleged that on June 3, 1930, Lon Hunt had obtained a judgment in the Chancery Court against Joe J. Howard, as surety on a note, in amount of $3865.29, and the cost of the cause, and the decree provided that execution may issue sixty days after the date of the decree. It was further alleged that the defendant Joe J. Howard was indebted to the complainant Sweetwater Bank & Trust Company by notes in the sum of $2242.85, and to the complainant First National Bank of Sweetwater by notes in the sum of $1066.67, and the S. L. Hunt debt of approximately $3500 (the judgment above referred to), and that the defendants were indebted to divers and various persons unknown to the complainants and in amounts unknown. It was stated that some of the creditors had brought suit and others were threatening to bring suits against the defendants, and a great part of the assets would be consumed by costs and expenses incident to the multiplicity of suits. That S. L. Hunt is threatening to levy an execution upon the farm of the defendants, and that he will levy said execution unless restrained by injunction of this Honorable Court, and if the farm is sold under execution it will not bring anything like its real worth, and other creditors of the defendants will suffer.

After alleging that the defendants are insolvent, the bill adds that all the creditors of the defendants, Joe J. Howard and Sallie Howard, including those mentioned herein and all others, whether or not they are parties to the cause, be required to prosecute their claims and demands against the defendants in this court and in this cause; and that they be allowed to file their petitions in said cause in term or vacation. That the bill be sustained as a general creditors' bill, and administered as such. That an attachment issue and be levied upon the property, and a receiver be appointed to take charge and manage it. That an injunction issue restraining all creditors from prosecuting their claims except in this cause, et cetera.

Process issued and was served upon Joe J. Howard and wife only; these defendants pled to the attachment, and answered the bill, and they also resisted the motion to sustain the bill as a general creditors' bill. Upon the hearing of this motion the Court referred the question of insolvency of the defendants to the Master to hear proof and report, and in the meantime kept alive the injunction awaiting his final disposition of the motion. The Clerk reported that the defendants were solvent, but upon exception the Court held that the defendants were insolvent, and sustained the bill as a general creditors' bill, appointed a receiver to take charge and manage the attached property, order a publication for creditors, requiring them to come into this cause and assert their claims,

and enjoining them from proceeding otherwise. An order of reference was made to ascertain the accounts of the estate; and the receiver was directed to advertise and sell the property at public sale and report his action. From this decree the defendants Joe J. Howard and wife prayed an appeal to the Court of Appeals, and the Chancellor in his discretion allowed the appeal, which in due time was perfected.

This appeal was perfected not later than January, 1931, and at the May Term, 1931, of the Court of Appeals, or on June 27, 1931, the Court handed down its opinion reversing the decree of the Chancellor in sustaining the bill as a general creditors' bill, but sustaining it as an independent bill so far as to grant judgment in favor of the complainant against the defendant Howard for the indebtedness due the complainants. The Court divided the costs, but since the transcript did not contain the correct taxation of the costs the cause was remanded to the lower court for the purpose of ascertaining the correct amount of costs.

While this appeal was pending in the Court of Appeals S. L. Hunt filed a petition in the cause in the lower court, alleging the recovering of his judgment against Joe J. Howard on June 3, 1930, and the subsequent filing of the general creditors' bill, with the various steps taken in the litigation. That he had a judgment lien against the real estate of the Howards, which would expire within one year of the date of the judgment, under the statute, if he were not restrained to perfect his lien by the injunction issued in the general creditors' bill. He further alleged that since he was not made a party by the issuance of process in the general creditors' bill, then that the injunction did not restrain him and he was free to pursue his statutory remedy. He prays:

"That he may have the benefit of your Honor's construction of said injunction and be advised as to his right to proceed with the execution to collect his judgment; and that, if the injunction is effective against his enforcement of his judgment lien by execution, the same be so modified as to authorize him to proceed by execution to collect his judgment, and so forth."

This relief was contested by the complainants, and the matter was heard by the Chancellor on March 13, 1931. He took it under advisement, and on the 23rd of April he rendered an opinion, filed on the 25th of April, holding that under the status of the complainants' general creditors' bill Hunt was not bound by the injunction, and he further decreed that unless the complainants would execute a bond in the penalty of $6000 conditioned to pay to the petitioner his judgment in case they are unsuccessful in the cause that execution might issue on Hunt's judgment. Ten days were allowed for the execution of the bond, which limit expired

on May 5. The complainants did not file the bond; and on May 6 Hunt requested an execution and placed it in the hands of the sheriff who levied upon the lands of Howard, but no sale was made by the sheriff on account of insufficient time to sell the land before the return date of the execution, the return date being the first Monday in June, or June 1, 1931.

On June 5 the complainant filed what is designated as an amended and supplemental bill, but which is probably more properly designated as an original bill in the nature of a supplemental bill, or an independent bill. It alleged that Hunt's statutory lien expired on June 3, 1931, since no levy and sale was made within the year as required by the statute to perfect the lien. That it had procured a judgment which was a lien upon the land in the general creditors' suit, and that its lien was superior and the only outstanding judgment lien upon the land. An injunction was obtained under this pleading enjoining Hunt and also the sheriff, who was made a party, from selling the farm under execution, or attempting to enforce the statutory lien which Hunt claims.

The theory of this bill was that the general creditors' bill did not enjoin or restrain Hunt from enforcing his statutory lien by a levy and sale of the land, since the Chancellor on April 25, at Hunt's solicitation, had expressly so adjudicated.

Upon this supplemental bill being filed the Chancellor enjoined the sale of the land under the Hunt levy, upon complainants' executed bond, but, in view of the appeal of Howard, which was then pending and undecided, the Chancellor declined to make, at that time, any further orders. Thereafter the Chancellor entered a decree reciting the various steps and proceedings in the litigation, and then decreed:

"At the December Term, 1930, it is insisted by complainants that the judgment of S. L. Hunt was not a prior claim, but the Court decreed that it was. However, the decree then entered enjoined all creditors from instituting separate suits and required them to prosecute their claims in this cause. The attachment was sustained in the estate of the defendants and the appointment of the receiver was made permanent, and he directed to take charge of and sell the property.

"There is no question made as to the legality of the levy, the contention is that no sale of the property was had within the twelve months after the decree, or judgment, in favor of Hunt, hence the lien is vacated and lost."

The Court then held the defendant Hunt was enjoined, stating:

"From the date his petition was filed herein, on March 13, 1930, to ten days after April 23, 1930, in view of the insistence and contention of complainants herein, in a judicial pro-

ceeding that he was so enjoined; that he was justified in a way in the outcome of such proceeding; that he did not bring the proceeding in the sense of a needless or frivolous proceeding, but brought the same in good faith to settle, in a legal way, the contention of complainants, and to obtain the consent of the court to levy on the property, by execution to be issued on his judgment, which property was then under attachment, and in the hands of a receiver, by a decree of this Court in this cause.''

The Court further states that since the property ''was in custodia legis, under attachment and in possession of a receiver, as above set out, that it was not only proper, but necessary for Hunt to obtain permission, by petition, or otherwise, to levy on and sell the property, under a bill of this character, whether he was a party to the bill or not, especially since an order of sale had been made in the cause.''

The Court further held that no estoppel could be set up against Hunt since nothing that he had done had injured or prejudiced the complainants; but on the other hand held that the complainants were estopped to insist that Hunt was not enjoined because of the allegations of the general creditors' bill, and their conduct thereunder. And their acts in resisting Hunt's petition at the hearing March 13, under which it was adjudged in favor of Hunt that he was not restrained or enjoined from a levy and sale under his execution.

The Court also found that there had been such adverse proceeding under the original general creditors' bill as contemplated under Shannon's Code, section 4711, and that it would have saved the bar in this cause.

The Court also held that the levy under the execution issued on Hunt's judgment was valid, there being no question made as to the legality of the levy, and that the failure of the levying officer to set apart homestead could be corrected in the order of sale, which was directed to be issued. Accordingly the Court dismissed the amended and supplemental bill, and from this decree the complainants have appealed to this Court and assigned error.

The appellee states that he insists principally upon the estoppel against the appellants, which was decreed by the Chancellor. It is insisted that the general creditors' bill recognized the validity of this judgment, and its principal purpose was to enjoin the levy and sale of the land under it, for the reason that the land would not bring a fair price. That the appellants appeared by counsel before the Chancellor, at the hearing of the appellees' petition, and resisted this petition for the very reason that the general creditors' bill did enjoin and restrain the appellees from a levy and sale of

the property under an execution issued upon the judgment. But notwithstanding this petition taken by the appellants, the original complainants, the Chancellor solemnly adjudicated that the general creditors' bill did not enjoin the petitioner Hunt from lifting and enforcing an execution. There was no attempt to appeal from this adjudication by either party. If the Court had jurisdiction to make the adjudication then the appellant should not be estopped from relying upon it because he resisted it in the outset. If he is, then we have an adjudication which the successful litigants can rely on but the unsuccessful litigants cannot. We think a litigant can contest an adjudication without estopping himself, and after the adjudication rely upon it as binding against all parties.

This brings us to the contention presented by the assignments of error. It is insisted the Chancellor erred in not sustaining the appellants' plea of judicial estoppel, because of a solemn allegation of the appellees' petition filed in the cause March 13, 1931. In this petition the appellee alleges that he was not enjoined by the general creditors' bill for the reason he was not made a party by the issuance of a subpoena to answer, and he was free to pursue his remedy under his judgment by demanding an execution, levy and sale of the property. But upon this question he asked the judgment of the Court, and the purpose of the petition was an adjudication by the Court upon the question. This allegation was but a conclusion of law which arose upon facts appearing of record, and could in no wise mislead the opposing parties. A judicial estoppel is principally enforced to discourage false swearing, and has no reference to injury to the opposite party. It does not make every pleader a guarantor of the correctness of his position when he can, without a violation of good faith, change his conclusion of the law, and, when he does, he will not be confronted with a judicial estoppel. We do not think the doctrine of judicial estoppel applies here. And we might add, that the appellants under the exigencies of the case changed their position with as much dexterity as the appellees.

It is assigned as error that the Chancellor erroneously overruled the appellants' plea of former adjudication; that the decree of April 25 solemnly adjudged that the general creditors' bill, and the injunction granted thereunder, did not restrain or obstruct the remedy of the petitioner afforded him by his execution. And that he was free to pursue his remedy since the date of his judgment. This decree was not appealed from, and if it is valid it remains in full force and effect, and is binding upon all the parties. It certainly is a former adjudication of the identical question presented and relied on by the appellee, Hunt.

We think this is a void adjudication and is not binding as a

res adjudicata, for the following reason: At the time of its entry the case in which the petition was filed had been transferred to the Court of Appeals for a hearing de novo; the Chancellor had lost jurisdiction to make further adjudication in the cause while the case was pending in the Court of Appeals. The petition sought a construction of a decree that had been vacated, and the modification to an injunction that had been made in a sense perpetual in that decree. An adjudication of this character was beyond the power and the jurisdiction of a Chancery Court at this time. It is true that the decree was a discretionary appeal, and it was expected that the case would be remanded to the Chancery Court. This fact does not affect the transfer of the case to the Court of Appeals, nor the vacating of the decree in the lower court by the appeal. Vaccaro v. Cicalla, 5 Pickle, 63, 14 S. W., 43.

In a note to Section 1262 of Gibson's Suits in Chancery, the author says:

"Upon a prayer for appeal, and grant of, an appeal, and the execution of the appeal bond, and the rise of the court, that court has no longer any jurisdiction of the case. The appellant cannot even thereafter dismiss his appeal in that court. Whatever is thereafter done in the cause must be done in the Appellate Court. Freeman v. Henderson, 5 Cold., 547." See also a later case of McCormick v. Phillips, 140 Tenn., 268, 204 S. W., 656.

The adjudication relied upon is in our opinion absolutely void, and cannot serve as a plea of former adjudication. The Chancellor did not err in failing to sustain it.

But if the general creditors' bill, and the injunction issued in connection with it, did not in fact obstruct or enjoin Hunt from pursuing his remedy by execution, levy and sale of the land, then he has lost his lien for the year has expired. Fidelity & Deposit Co. of Maryland v. Fulcher Brick Co., 161 Tenn., 298, 30 S. W. (2d), 253.

We are of the opinion that the creditors' bill, and the injunction rendered under it, in fact restrained and enjoined Hunt from pursuing his remedy by demanding an execution and levy and sale of the land. He was enjoined from enforcing the execution except in that cause, and he had notice of this injunction, so it became immaterial in this sense whether or not he was made a party defendant by the service of process. The advertisement ordered for the notification of creditors served as process, and notified them to have themselves made parties by filing petitions in the cause, and the advertisement also gives notice of the injunction. Mr. Gibson states when an injunction becomes effective:

"An injunction becomes effective as to the party enjoined

only from the time of its actual notice. But to render an injunction binding and operative upon a defendant, it is not necessary that he should have been officially appraised of its existence, or actually served with the writ. If the defendant has heard the order of the court granting an injunction, or has in any manner received actual notice of its existence, he is as effectually bound by its provision as if actually served with process. . . ." See Gibson's Suits in Chancery, Sec. 845.

An injunction improvidently or irregularly granted remains in force until it is vacated, and is binding upon the parties. The injunction granted under the general creditors' bill remained in force until June 27, 1931, obstructing and restraining Hunt from the enforcement of his execution. On June 5, 1931, another injunction was issued in the case under review, restraining Hunt and the sheriff from demanding a venditioni exponas. So Hunt has been under restraint from the date of the filing of the general creditors' bill to the present time.

It may be said that since the general creditors' bill has been transferred to the Court of Appeals, then it was not possible to file an amended and supplement bill in the Chancery Court, which necessarily modified the record which was then in the Court of Appeals. It is not necessary to pass upon this question, for the appellee Hunt was enjoined by an injunction issued upon the fiat of the Chancellor, and he is not justified in disregarding it for the reason that it was not proper to file the pleading as an amendment to the original bill. This amendment and supplemental bill, which, we have under review, was filed in aid to the general creditors' bill, and for the benefit of all creditors; the general creditors' bill has been dismissed, but the complainants are attempting to prosecute the amended and supplemental bill without amending it so that it will apply to their individual interests. But as stated, this too is an immaterial issue.

If the sheriff, under execution in his hands, proposed to sell this land subject to the homestead rights, without setting the homestead apart as provided by statute, then this question is no longer of importance because he was prevented from carrying out the sale for insufficient time, and it is now necessary that he procure a venditioni exponas, and the Chancellor stated this error would be collected in the order of sale. The sheriff's error is not attributable to the judgment creditor. Sites v. Sanders, 162 Tenn., 593, 39 S. W. (2d), 539.

For the reasons stated above we conclude the Chancellor did not err in dismissing this bill, and his decree is affirmed with costs.

Snodgrass and Thompson, JJ., concur.